IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MILITZA PAGÁN QUIÑONES, et al.,<br><br>**Plaintiffs**<br><br>v.<br><br>YANITSIA IRIZARRY MÉNDEZ, et al.,<br><br>**Defendants** | **CIVIL NO.** 10-1378 (JAG) |

OPINION AND ORDER

GARCIA-GREGORY, D.J.

Before the Court are Esteban Pérez Ubieta's Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(5) (Docket No. 15) and Yanitzia Irizarry Méndez and Pérez Ubieta's Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) (Docket No. 12). For the reasons set forth below, the Court hereby **DENIES** Pérez's Motion to Dismiss (Docket No. 15) and **GRANTS** in part and **DENIES** in part Pérez and Irizarry's Motion to Dismiss (Docket No. 12).

PROCEDURAL BACKGROUND

On May 7, 2010, fourteen ex-employees of the Puerto Rico Department of Family Services (the "Department"), along with several of their conjugal partnerships, filed the complaint in this case. (Docket No. 3). The complaint named Yanitsia Irizarry Méndez ("Irizarry"), both in her personal and official capacity

Civil No. 10-1378 (JAG)                                                    2

as Secretary of the Department of Family Services, and Esteban Pérez Ubieta ("Pérez"), both in his personal and official capacity as Administrator of The Department. The complaint also named the Pérez and Irizarry's respective conjugal partnerships. Id. at ¶¶ 17, 19. Plaintiffs claim that they were terminated after the New Progressive Party ("NPP") won the 2008 elections because they are members of the Popular Democratic Party ("PDP"). They claim that their constitutional and statutory rights to freedom of speech and association, to equal protection and due process under the United States Constitution and the Constitution of Puerto Rico were infringed.

They specifically allege causes of action under 42 U.S.C. §§ 1983, 1985 and 2000(d); and the Fourteenth Amendment of the Constitution of the United States of America. They also claim they were discriminated against in violation of Act No. 114 of May 7, 1942, P.R. Laws Ann. tit. 29, §§ 140 *et seq.*; Act No. 100 of June 30, 1959, P.R. Laws Ann. tit. 29, §§ 146 *et seq.*; Act No. 184 of August 3, 204, P.R. Laws Ann. tit. 3, §§ 1461[1] *et seq.*; and Article 1802 of the Civil Code of Puerto Rico, P.R. Laws Ann. tit. 31, § 5141. (Docket No. 3).

---

[1] Plaintiffs cited "Personnel Law of Puerto Rico, P.R. Laws Ann. tit. 3, §§1331, et seq." (Docket No. 3, ¶¶ 11, 52). This Act was repealed in 2004.

Plaintiffs argue that they were career employees and that Pérez and Irizarry acted with deliberate indifference towards their constitutional and statutory rights. (Docket No. 3, ¶¶ 42, 46). Plaintiffs further aver that "upon assuming office, defendant Irizarry, in participation with defendant Pérez, conspired to discriminate and/or discriminated against plaintiffs by depriving them of the property interest that they had in their employment without due process of law, and by otherwise discriminating against them, all because of their perceived affiliation to the PDP." (Docket No. 3, ¶ 26). Plaintiffs also allege that, on or about September 25, 2009, they received termination letters signed by Pérez which stated that dismissals were in accordance with Act 7. Id. at ¶¶ 32-33.

Plaintiffs also aver that, contrary to Act 7's mandate to dismiss employees solely on a seniority basis, no studies or lists were made nor were any published regarding each employee's seniority status. Plaintiffs also state that Pérez and Irizarry "did not afford the plaintiffs a meaningful opportunity to verify their seniority status or to question the decision to include them in the roster of employees to be terminated." (Docket No. 3, ¶¶ 28-31).

Civil No. 10-1378 (JAG)                                                  4

On September 21, 2010 Pérez and Irizarry filed a Motion to Dismiss Pursuant to Rule 12(b)(6) of the Fed.R.Civ.P. (Docket No. 12). Shortly thereafter, Pérez filed a Motion to Dismiss Pursuant to Rule 12(b)(5). Plaintiffs filed oppositions to both motions. (Docket Nos. 16, 17)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(5) permits a court to dismiss an action for "insufficient service of process." Fed. R. Civ. P. 12(b)(5). As set forth in Rule 4, a defendant may "object to the plaintiff's failure to comply with the procedural requirements for proper service of the summons and complaint." Thompson v. Sears, Roebuck and Co., No. 04-5342, 2006 WL 573796, at 2 (E.D. Pa. 2006). "In resolving a motion under Rule 12(b)(5), the party making the service has the burden of demonstrating its validity when an objection to service is made." Id. (citing Reed v. Weeks Marine, Inc., 166 F. Supp. 2d 1052, 1054 (E.D. Pa. 2001).

Regarding motions under Rule 12(b)(6), the Supreme Court has stated in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), that in order for a complaint to survive it must allege "a plausible entitlement to relief." Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95-96 (1st Cir. 2007) (quoting

Twombly, 550 U.S. at 559). While Twombly does not require heightened fact pleading of specifics, it does require enough facts to "nudge [plaintiffs'] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. Accordingly, in order to avoid dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555.

In Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), the Supreme Court upheld Twombly and clarified the principles that must guide this Court's assessment of the adequacy of the plaintiff's pleadings when evaluating whether a complaint can survive a Rule 12(b)(6) motion. See Iqbal, 129 S.Ct. at 1949-50. The court must identify any conclusory allegations in the complaint as such allegations are not entitled to an assumption of truth. Id. at 1949. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). A claim has facial plausibility when the pleaded facts allow the court to reasonably infer that the defendant is liable for the specific

Civil No. 10-1378 (JAG)                                                    6

misconduct alleged. Id. at 1949, 1952. Such inferences must be more than a sheer possibility and at least as plausible as any obvious alternative explanation. Id. at 1949, 1951. Plausibility is a context-specific determination that requires the court to draw on its judicial experience and common sense. Id. at 1950.

In a recent case, Ocasio-Hernández v. Fortuño Burset, 640 F.3d 1 (1st Cir. 2011), the First Circuit analyzed and distilled several principles from the Supreme Court decisions in Twombly and Iqbal. It thus boiled down the inquiry a Court must perform while resolving a motion to dismiss under Fed.R.Civ.Proc. 12(b)(6) to a two-pronged approach. The first step involves the process of identifying and disregarding the threadbare recitals of the elements of a cause of action and/or the legal conclusions disguised as fact. Occasion-Hernández, 640 F. 3d at 23-24. The second step involves treating the non-conclusory factual allegations as true, even if seemingly incredible, and determine if those "combined allegations, taken as true, state a plausible and not merely a conceivable, case for relief." Id. at 24-25 (quoting Sepúlveda-Villarini v. Dep't of Educ. of P.R., 628 F.3d 25, 29 (1st Cir. 2010)).

The First Circuit warned that even if determining the plausibility of a claim "requires the reviewing court to draw on

Civil No. 10-1378 (JAG)                                                7

its judicial experience and common sense," it must not attempt to forecast the likelihood of success even if recovery is remote and unlikely. Id. at 25 (quoting Iqbal, 129 S. Ct. at 1950) (other citations omitted). It further stated that, "[t]he relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the Court to draw from the facts alleged in the complaint." Id. at 26.

## DISCUSSION AND ANALYSIS

As a threshold matter, the Court will address the issue regarding whether Pérez was properly served with summons and, hence, whether the Court may exercise its jurisdiction over him in his personal capacity. He argues that no proof of service was returned for him and that the Proof of Service Form submitted by Plaintiffs states that the name of the person served is the server himself. (Docket No. 15-1). Pérez also submitted a "Statement Under Penalty of Perjury" which states that he never personally received summons. (Docket No. 15-2).

In their opposition, Plaintiffs reference the Proof of Service Form presented into evidence by Pérez. (Docket No. 15-1). They also submitted a "Statement Under Penalty of Perjury," in which the process server states that he personally served

Civil No. 10-1378 (JAG)                                                     8

Pérez and that he accidentally wrote his own name instead of Pérez's in the Proof of Service Form. (Docket No. 17-1). Plaintiffs also posit that Pérez "does not provide any authority to sustain his argument that any error in the return is fatal." (Docket No. 17, p. 2).

Fed R. Civ. P. 4(l)(1) states that "[u]nless service is waived, proof of service must be made to the court… ." However, "[f]ailure to prove service does not affect the validity of service. The court may permit proof of service to be amended." Fed R. Civ. P. 4(l)(3). Plaintiffs' Statement Under Penalty of Perjury is, in effect, an amendment to the Proof of Service Form. Taking into account both parties' allegations, together with the documentation, the Court is satisfied that Pérez was properly served and, therefore, the Court may exercise its jurisdiction over him. The Court now turns to the Motion to Dismiss under Rule 12(b)(6).

Irizarry and Pérez's first argument is that Plaintiffs failed to allege the elements of a cause of action arising under 42 U.S.C. § 1983 and that they have failed to establish the violation of a right protected by the Constitution or laws of the United States by an individual acting under color of State law. They argue, citing <u>Mt. Healthy City Sch. Dist. Bd. of Educ.</u>

v. Doyle, 429 U.S. 274 (1977), that Plaintiffs must present evidence, be it direct or circumstantial, that the constitutionally protected activity was the motivating factor behind the decision to terminate employment. Specifically, they state that "[…] the Complaint before us is devoid of any specific facts that could reasonabl[y] allow this Honorable Court to conclude that plaintiffs were terminated from employment because of their political affiliation." (Docket No. 12, p. 12).

In their opposition, Plaintiffs argue that Pérez and Irizarry's arguments are premature and that they sufficiently alleged their claims. They argue that the Complaint complies with the "who did what to whom, when where and why" test set forth by Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 68 (1st Cir. 2004).

The First Circuit has established that a *prima facie* case of political discrimination has four elements: "(1) that the plaintiff and defendant have opposing political affiliations, (2) that the defendant is aware of the plaintiff's affiliation, (3) that an adverse employment action occurred, and (4) that political affiliation was a substantial or motivating factor for the adverse employment action." Lamboy-Ortiz v. Ortiz-Vélez, 630

Civil No. 10-1378 (JAG)                                              10

F.3d 228, 240 (1st Cir. 2010) (citing <u>Welch v. Ciampa</u>, 542 F.3d 927, 938 (1st Cir. 2008)).

Contrary to what Pérez and Irizarry argue, the Complaint contains specific nonconclusory allegations with regards to this cause of action. According to the Complaint: Plaintiffs were employees of the Department; they were career employees; they always fulfilled their duties satisfactorily; they were perceived by Pérez and Irizarry as members of the PDP; they were fired by Pérez and Irizarry, who are known members of the NPP; the letter of termination was signed by Pérez and Irizarry; the letter stated that the dismissals were authorized under Act 7; the firings did not follow the procedure defined by Act 7; and they were never given a chance to appeal or verify the process. (Docket No. 3, ¶¶ 21, 22, 28, 29, 30, 31, 32, 33, 46).

The Court considers that said allegations are enough to establish a plausible claim of political discrimination under § 1983 and survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Furthermore, Pérez and Irizarry's arguments are based on a lack of evidence and burden of proof, making them woefully premature at this stage of the proceedings.

Pérez and Irizarry also aver that Plaintiffs failed to establish a plausible claim for violation of their Fourteenth

Civil No. 10-1378 (JAG)                                                   11

Amendment rights to due process. Specifically, they argue that employees with property rights over their jobs do not always have the right to a hearing before dismissal. Pérez and Irizarry cite the "reorganization exception" recognized in Duffy v. Sarault, 892 F.2d 139 (1st Cir. 1989). They allege that this exception applies when a reorganization or cost-cutting measure results in the dismissal of employees. In such instances, employees are not entitled to a pre-termination hearing, as long as the reorganization or cost-cutting measure is not merely pre-textual. Pérez and Irizarry also cite United Automobile v. Luis Fortuño, 677 F. Supp. 2d 530 (D.P.R. 2009), where it was found that the dismissal provisions under Act 7 are cost-cutting and reorganization measures. They refute Plaintiffs' argument that no scientific study regarding employee seniority was made, nor was any such list available.

Pérez and Irizarry also argue that the only requirements established under Act 7 with regards to dismissals are that the agency notify the employee about his or her seniority and that the employee have the opportunity of requesting a hearing in order to dispute the seniority notified by the agency. (Docket No. 12). They further aver that the Complaint is devoid of any

Civil No. 10-1378 (JAG)                                                          12

allegation asserting that the government failed to comply with said procedure[2]. (Docket No. 12).

In their opposition, Plaintiffs aver that regardless of the reorganization and cost-cutting exceptions, the employer must still abide by the process defined by Act 7 and that these procedures were not followed. (Docket No. 3, ¶¶ 29-31).

Plaintiffs did not specify whether their Fourteenth Amendment claim is substantive or procedural but, after examining the allegations, the Court will assume that the claim is procedural. To prevail on a procedural due process claim, a plaintiff must establish a protected liberty or property interest, and allege that while acting under color of state law the defendants deprived him of that interest without adequate process. Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 56 (1st Cir. 2006). Under Puerto Rico law, career or tenured employees have property rights in their continued employment. See Marrero-Gutíerrez v. Molina, 491 F.3d 1, 8 (1st Cir. 2007); González-De-Blasini v. Family Department, 377 F.3d 81, 86 (1st Cir. 2004). In Whalen v. Massachusetts Trial Court, 397 F.3d 19 (1st Cir.

---

[2] It should be noted that the cited Act 7 disposition (Section 37.04) clearly states that each employee must be notified of his/her seniority and be given a chance to refute such conclusions. It is evident from the face of the complaint that Plaintiffs are claiming that the government failed to comply with the statutory process set forth by Act 7. (Docket No. 3, ¶¶ 29-31).

Civil No. 10-1378 (JAG)                                                    13

2005), the First Circuit "recognized a limited 'reorganization exception' to due process that eliminates the need for a hearing where a reorganization or other cost-cutting measure results in the dismissal of an employee." Id. at 24 (citations omitted).

Regardless of whether layoffs under Act 7 fall under the "reorganization exception," Act 7 establishes a process to carry out dismissals. Plaintiffs specifically aver that no seniority studies were made; that no seniority list was made available in order for Plaintiffs to verify their seniority status; that they were never given a meaningful opportunity to appeal either their status or their dismissal; and that these omissions go against the process established in Act 7. (Docket No. 3, ¶¶ 28-31). The Court therefore finds that Plaintiffs' allegations sufficiently allege a plausible claim of procedural due process violations.

Irizarry and Pérez next argue that Plaintiffs have no right to injunctive relief, alleging that the case does not meet the requirements of the four-part test for trial courts set forth by Lanier Prof. Serv's, Inc. v. Ricci, 192 F.3d 1 (1st Cir. 1999).

Contrary to what Pérez and Irizarry posit, Plaintiffs request a permanent injunction to reinstate them "to their full panoply of functions in the positions from which they were dismissed […] and enjoining defendants from further

Civil No. 10-1378 (JAG)                                                14

discriminating against plaintiffs because of their political affiliation and/or beliefs." (Docket No. 3, p. 10).

In order for a Court to determine whether or not to grant a permanent injunction, there must first be a trial on the merits. See Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 546 n.12 (1987) (to justify permanent injunctive relief, plaintiff must show actual success on merits). Therefore, Pérez and Irizarry's arguments are clearly premature.

Irizarry and Pérez further argue that Plaintiffs have failed to prove that a conspiracy took place and "that the allegation of conspiracy [must] be supported by facts, not conclusions, including an explanation of how the conspiracy was made or 'hatched.'" (Docket No. 12, p. 19).

Plaintiffs oppose, arguing that the "allegations of the complaint specifically address that [Pérez and Irizarry], acting in concert, conspired to take certain actions to violate the plaintiffs' statutory and constitutional rights." (Docket No. 16, p. 5).

Although Plaintiffs do not specify which subsection of 42 U.S.C. § 1985 is the basis for their claim, facts alleged in the complaint faithfully track § 1985(3), which prohibits two or more persons from conspiring for the purpose of depriving any

Civil No. 10-1378 (JAG)                                              15

person of the equal protection of the laws. The Complaint alleges that Pérez and Irizarry worked together to discriminate against Plaintiffs based on political affiliation. (Docket No. 3, ¶¶ 26, 34, 40, 41, 42).

The arguments presented by both parties are futile given that the First Circuit has explicitly "decline[d] to extend § 1985(3)'s protection to political affiliation." Pérez-Sánchez v. Pub. Bldg. Auth., 531 F.3d 104, 109 (1st Cir. 2008). Therefore, Plaintiffs' § 1985(3) claims shall be dismissed.

Lastly, Pérez and Irizarry aver that any monetary claim against them in their official capacity is barred by the Eleventh Amendment. Plaintiffs argue in their opposition that the Eleventh Amendment is only extended to the State itself and not to officials in their personal capacity. The Plaintiffs also argue that the State is not a party to the suit and that its immunity bars the State's inclusion in the case. Plaintiffs further posit that said immunity would make dismissal of Pérez and Irizarry on either personal or official capacity unnecessary.

The Supreme Court has held that the Eleventh Amendment bars federal suits by citizens against the state. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984). Therefore,

Civil No. 10-1378 (JAG)                                              16

"[u]nless a State has waived its Eleventh Amendment immunity or Congress has overridden it, […] a State cannot be sued directly in its own name regardless of the relief sought." Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985) (citing Alabama v. Pugh, 438 U.S. 781 (1978)). A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office (in this case, the State). Brandon v. Holt, 469 U.S. 464, 471-472 (1985).

The Commonwealth of Puerto Rico is treated as a State for purposes of Eleventh Amendment immunity analysis. Redondo Constr. Corp. v. P.R. Highway & Transp. Auth., 357 F.3d 124, 125 n.1 (1st Cir. 2004). Although The Commonwealth of Puerto Rico consented to be sued, this is only in local courts. Act No. 104, P.R. Laws Ann. tit. 32, § 3077. Moreover, a "waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts." Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99 n.9 (2010).

Hence, Pérez and Irizarry cannot be sued in this Court in their official capacities.

## CONCLUSION

For the reasons stated above, the Court hereby **DENIES** Pérez's Motion to Dismiss (Docket No. 15) and **GRANTS** in part and

Civil No. 10-1378 (JAG)                                             17

**DENIES** in part Pérez and Irizarry's Motion to Dismiss (Docket No. 12). Plaintiffs' § 1985(3) claim, along with the claim against Pérez and Irizarry in their official capacity, shall be dismissed **with prejudice**.

    IT IS SO ORDERED.

    In San Juan, Puerto Rico, this 12th day of July, 2011.

                                          S/ Jay A. García-Gregory
                                          JAY A. GARCÍA-GREGORY
                                          United States District Judge